**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alexander Mercado, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>McDonald's Corporation,<br><br>Defendant. | Case No.: 26-cv-09142<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexander Mercado ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against McDonald's Corporation ("Defendant" or "McDonald's"), and alleges the following upon personal knowledge as to his own purchase and experience, and upon information and belief and investigation of counsel as to all other matters.

**<u>NATURE OF THE ACTION</u>**

1. This is a consumer class action concerning Defendant's marketing and sale of McCafé® beverages (the "Products") bearing the claim "Sugar Free" (the "Challenged Representation"). In truth, the Products contain approximately 2 to 18 grams of lactose sugar, a disaccharide like table sugar (sucrose), in each serving.

2. Lactose sugar is not present in the Products in trace or incidental amounts. Whole milk is the first ingredient in Sugar Free Vanilla Cappuccino, Iced Sugar Free Vanilla Latte and Sugar Free Vanilla Latte, and the third ingredient in Iced Sugar Free Vanilla Coffee, according to Defendant's ingredient statement on its website.

3. Lactose is a natural sugar found inherently in the milk and present in food products made from milk. Lactose is a carbohydrate made of two simple sugar units, glucose and galactose, joined together by a chemical bond. Like other sugars, lactose is soluble in water, has a mildly

sweet taste (about one-sixth as sweet as sucrose), and provides approximately four calories per gram.

4. Plain cow's milk contains about 12 grams of lactose per 8-ounce (240 ml to 250 ml) serving, which equals roughly 5 grams of lactose per 100 ml. By weight/mass: Lactose makes up about 4.5% to 5% of the total composition of cow's milk (averaging around 4.7% to 4.8%).

5. In making the Challenged Representation, Defendant also violates the Federal nutrient content claim regulations promulgated under the Federal Food, Drug, and Cosmetic Act.

6. According to 21 C.F.R. § 101.9(c)(6)(ii), the term "Total Sugars" is defined as the "sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)" present in a food product. Because lactose sugar is scientifically and chemically classified as a disaccharide, it falls squarely within these unambiguous regulatory definitions and constitutes a sugar.

7. Defendant's statement that the Products are "Sugar Free" is an express nutrient content claim governed by 21 C.F.R. § 101.13(b)(1) which FDA permits only if "[t]he food contains less than 0.5 g of sugars," as defined in § 101.9(c)(6)(ii) and § 101.60(c)(1)(i), "per reference amount customarily consumed and per labeled serving."

8. Because the Products contain approximately 2 to 18 grams of lactose sugar in each serving, Defendant's "Sugar Free" representation is false, highly deceptive to the reasonable consumer, and a direct violation of 21 C.F.R. §§ 101.13(b) and 101.60(c)(1)(i), and 21 U.S.C. § 343(a)(1), and (r)(1)(A).

9. Consumers consistently pay more for products marketed as free of sugar or other undesirable ingredients, and Defendant's placement of the "Sugar Free" claim is a deliberate

marketing choice designed to capture that premium. Plaintiff and members of the putative Class paid for the Products they believed were sugar free, and did not receive the benefit of that bargain.

10. Accordingly, Plaintiff brings this action against Defendant for violations of New York General Business Law ("GBL") §§ 349 and 350, the materially similar consumer protection laws of other States, and unjust enrichment.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because: (a) the proposed Class consists of more than 100 members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) minimal diversity exists in that at least one member of the proposed Class is a citizen of a state different from Defendant. Plaintiff is, and at all relevant times has been, a citizen of the State of New York, domiciled in Bronx County, New York. Defendant is a citizen of Delaware (its state of incorporation) and Illinois (its principal place of business).

12. This Court has personal jurisdiction over Defendant because Defendant transacts business, distributes products for sale, and derives substantial revenue from goods sold within the State of New York, including within this District, and because the conduct giving rise to this action occurred in substantial part within this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in this District, including Plaintiff's purchase of a Product in Bronx County, New York, which lies within the Southern District of New York.

## PARTIES

14. Plaintiff Alexander Mercado is a resident of Bronx, New York. In or about September 2026, Plaintiff purchased the Iced Sugar Free Vanilla Latte beverage bearing the "Sugar

Free” representation from the McDonald’s restaurant located at 5765 Broadway, Bronx, New York. Plaintiff paid approximately $4 for the beverage.

15. Before purchasing, Plaintiff read and relied on the “Iced Sugar Free Vanilla Latte” claim, which was displayed on the restaurant’s menu/order board. Based on that representation, Plaintiff reasonably but mistakenly believed that the beverage contained no sugar. After his purchase, Plaintiff learned that the beverage contained at least 7 grams of lactose, and that the Product therefore contained sugar.

16. Defendant McDonald’s Corporation is a corporation organized under the laws of Delaware with its principal place of business at 110 North Carpenter Street, Chicago, Illinois 60607.

17. Defendant manufactures or causes to be manufactured, distributes, markets, and sells the Products for sale to consumers. Defendant participates in, reviews, or approves the labeling and packaging under which the Products are sold to New York and nationwide consumers.

18. Defendant placed the Products into the stream of commerce with knowledge of, and control over, the Challenged Representation.

19. Defendant distributes, markets and sells the Products through national and regional franchises, as well as through third party Apps, and its own website, throughout the State of New York and the United States.

## FACTUAL ALLEGATIONS

### A. Consumers Actively Seek Out Products Represented as Sugar Free

20. A 2025 International Food Information Council (IFIC) survey of 3,000 Americans found that 75% were trying to limit or avoid sugar (61% limiting, 14% avoiding), and 63% were concerned about how much sugar they consume.[1]

21. That concern is illustrated in purchasing behavior. In the same survey, 25% of respondents said they buy "sugar-free" options when available, up from 21% in 2021, and 27% said they choose products labeled "reduced sugar," up from 22%. Other research points the same way. Euromonitor's health and nutrition survey found that 53% of respondents cited eating less sugar as a priority. Mintel reported that nearly three in five consumers choose low-sugar products for their general health.

22. Public health authorities have long urged Americans to limit sugar. The federal Dietary Guidelines for Americans, 2020–2025, recommend limiting added sugars to less than 10% of daily calories for ages 2 and older.[2]

23. Manufacturers have responded to this demand. Grand View Research estimates the global zero-sugar beverage market at $70.83 billion in 2025, growing to $148.77 billion by 2033, with North America as the largest regional market. The same report says zero-sugar teas and ready-to-drink coffee are gaining momentum among consumers seeking benefits without added sugar.[3]

---

[1] Jeff Gelski, *IFIC Survey Finds 75% Seeking to Reduce Sugar Intake*, Food Bus. News (Dec. 5, 2025), https://www.foodbusinessnews.net/articles/29460-ific-survey-finds-75-seeking-to-reduce-sugar-intake (last visited October 18, 2026).

[2] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf (last visited October 18, 2026).

[3] *Zero Sugar Beverages Market Size, Growth Report, 2026–2033*, Grand View Rsch., https://www.grandviewresearch.com/industry-analysis/zero-sugar-beverages-market-report (last visited October 18, 2026).

24. Coffee based beverages are part of this trend. A restaurant-supply trade publication describes sugar-free flavored syrups, including vanilla, as increasingly popular among health-conscious coffee drinkers who watch their sugar intake.[4]

25. A "Sugar Free" claim on the Products is therefore material to consumers deciding what to buy.

**B. The Products and the Challenged Representation**

26. Defendant distributes, markets, and sells McCafé® beverages, including Sugar Free Vanilla Cappuccino, Iced Sugar Free Vanilla Latte, Sugar Free Vanilla Latte, and Iced Sugar Free Vanilla Coffee.[5]

27. In-store customers can order the Products verbally by asking an employee for the beverage by name or by ordering at a kiosk.

28. Defendant does not inform consumers at the point-of-sale of the actual sugar content of the "Sugar Free" beverages.

29. In its physical stores, Defendant does not display the sugar content of the "Sugar Free" beverages as part of its visible signage or menus.

30. The following visual illustrates how a customer might use a McDonald's self-service kiosk to order a Sugar Free Vanilla Cappuccino, Iced Sugar Free Vanilla Latte, Sugar Free Vanilla Latte, or Iced Sugar Free Vanilla Coffee.

31. First, the customer approaches the kiosk and taps McCafé® to find the "Sugar Free" drinks. See image below.

---

[4] Nelson, K. (2026, January 14). *Top 10 flavoring syrups every coffee shop should have*. WebstaurantStore. https://www.webstaurantstore.com/blog/4698/best-coffee-flavoring-syrups.html (last visited October 18, 2026).

[5] Discovery may reveal that Defendant distributes additional flavors, varieties, or formats bearing the same or a substantially similar representation, and Plaintiff reserves the right to amend this Complaint to add such products.




32. Second, the customer chooses the desired drink, such as Iced Sugar Free Vanilla Latte, Sugar Free Vanilla Latte or Sugar Free Vanilla Cappuccino. See image below.




33. After the customer chooses Iced Sugar Free Vanilla Latte as the option, a new screen appears with prompts to choose the number of drinks and the size (small, medium, or large). Customers may optionally press the "Nutrition & Ingredients" tab if they are curious. See image below.




34. When the customer presses "Nutrition & Ingredients" tab, a new window opens with calorie information for the beverage and the ingredients. See image below.




35. The Nutrition & Ingredient window for large Iced Sugar Free Vanilla Latte shows 330 total calories, 0 calorie for ice, 25 calories for vanilla syrup, 5 calories for espresso shot, 100 calories for whole milk.

36. The Nutrition & Ingredient window for large Sugar Free Vanilla Cappuccino shows 220 total calories, 5 calories for sugarless vanilla syrup, 5 calories for espresso shot, 100 calories for whole milk.

37. Nowhere does Defendant inform customers that the Products contain sugar.

38. The Challenged Representation conveys a single, unambiguous message to a reasonable consumer: that the Products are sugar free. That is the ordinary, common sense and expected meaning of the phrase "Sugar Free."

39. That message is false. The Products' ingredient statements reflect that Defendant adds whole milk, which contains lactose, a disaccharide sugar, during preparation.

40. Nothing about the placement, size, or presentation of the word "whole milk" listing would alert a reasonable consumer, unprompted, that whole milk contains a sugar that contradicts the Challenged Representation.

**C. Lactose Sugar Is a Sugar Within the Meaning of Applicable Labeling Standards**

41. Lactose is scientifically classified as a sugar because of its chemical structure. It is a carbohydrate and, more specifically, a disaccharide. A disaccharide is a type of sugar that is made up of two smaller sugar molecules, called monosaccharides. The National Dairy Council, through U.S. Dairy, defines lactose as a disaccharide (sugar) of "glucose and galactose" and identifies it as "the natural sugar in milk."

42. Because it is a free disaccharide, lactose sugar falls within the federal regulatory definition of "total sugars," which is defined as "the sum of all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Thus, the FDA's regulatory definition is consistent with the scientific and industry classification of lactose as a sugar.

43. Lactose is composed of the monosaccharides glucose and galactose, which are chemically connected by a glycosidic bond. Its molecular formula is $C_{12}H_{22}O_{11}$. During digestion, the enzyme lactase breaks the glycosidic bond, a type of covalent bond that joins a carbohydrate molecule to another group, in lactose and produces glucose and galactose, which can then be absorbed and used by the body. Its chemical structure therefore provides a scientific basis for classifying lactose as a disaccharide sugar.

44. The fact that lactose is a disaccharide is important because the scientific term "sugar" includes both monosaccharides and disaccharides. Monosaccharides include sugars such as glucose, fructose, and galactose, while disaccharides include sugars such as lactose, sucrose,

and maltose. Lactose is classified as a sugar not because it is found in milk or tastes sweet, but because its molecular structure places it within the disaccharide category.

### D. The McCafé® Beverages Contain Approximately 2 to 18 Grams of Lactose Sugar Per Serving

45. The 2 to 18 grams of lactose sugar per serving figure can be corroborated using protein and fat as a yardstick: because they come almost entirely from the milk, they show how much milk the drink contains, and the lactose amount follows by simple conversion.

46. The large Sugar Free Vanilla Latte contains 12 grams of protein, 12 grams of fat, 29 grams of carbohydrate, and 270 calories.

47. One cup of whole milk (244 g) has about 7.7 g protein, 8.0 g fat and 12.3 g lactose, according to USDA data.[6] The syrup, water and espresso add almost no protein or fat, so nearly all of the 12 g protein and 12 g fat in this beverage came from the milk.

48. Dividing the beverage's 12 g of protein by 7.7 g per cup yields about 1.56 cups of milk, and dividing its 12 g of fat by 8.0 g per cup yields about 1.50 cups. Both calculations indicate about 1.5 cups of milk.

49. Both figures indicate that the milk contributes ~18.5-19 grams of lactose without taking into account decimal rounding and other adjustments permitted by the FDA.

50. The 270 calories in the beverage can be used to crosscheck the ~18.5-19 grams of lactose. About 1.5 cups of milk is approximately 224 calories (1.5 × 149). The remaining ~46 calories are most likely the erythritol, which seems to have counted at 4 calories per gram (about 11 grams).

---

[6] U.S. Dep't of Agric., Agric. Rsch. Serv., *FoodData Central*, Milk, whole, 3.25% milkfat, without added vitamin A and vitamin D, FDC ID 172217 (SR Legacy, Apr. 2018), https://fdc.nal.usda.gov/food-details/172217/nutrients (last visited October 18, 2026).

51. In fact, the ~18.5-19 grams of lactose sugar is consistent with Defendant's own website which listed Sugar Free Vanilla Latte as containing 18 grams of sugar for large, 14 grams for medium and 11 grams for small.[7]

52. On a different page of the same website, a large Iced Sugar Free Vanilla Latte contains 11 grams of sugar, a medium contains 8 grams and a small contains 7 grams.[8]

53. A large Sugar Free Vanilla Cappuccino contains 12 grams of sugar, a medium contains 8 grams and a small contains 7 grams.[9]

54. A large Iced Sugar Free Vanilla Coffee contains 2 grams of sugar, a medium contains 2 grams and a small contains 1 gram.[10]

55. By any measure, the quantities of sugar in the Products are deliberate, material, and functionally significant amounts — precisely what the "Sugar Free" representation contradicts.

### E. The Challenged Representation Violates FDA Nutrient Content Regulations and the Products are Misbranded

56. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

57. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21

[7] https://www.mcdonalds.com/us/en-us/product/latte-sugar-free-french-vanilla-large.html (last visited October 18, 2026).

[8] https://www.mcdonalds.com/us/en-us/product/iced-latte-with-sugar-free-french-vanilla-syrup-large.html (last visited October 18, 2026).

[9] https://www.mcdonalds.com/us/en-us/product/cappuccino-with-sugar-free-vanilla-syrup-large.html (last visited October 18, 2026).

[10] https://www.mcdonalds.com/us/en-us/product/iced-coffee-sugar-free-french-vanilla-large.html (last visited October 18, 2026).

C.F.R. § 101.13(c). By contrast, Defendant's "Sugar Free" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

58. The "Sugar Free" representation is a nutrient-content claim because it expressly characterizes the level of sugar. 21 C.F.R. § 101.13(b). Defendant's menu boards, kiosk screens, and other advertising repeat the same message, which is likewise alleged to be misleading under state law.

59. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . ..").

60. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" nutrient content claim at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> i. The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> ii. The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

61. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

62. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Lactose sugar, as a disaccharide, falls squarely within that definition. The lactose sugar in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

63. Each serving of the Products contains approximately two to eighteen grams of lactose sugar. Those amounts of sugar, by themselves, are up to thirty-six times the FDA's threshold for labeling a product "sugar free" under section 101.60(c)(1)(i). The Products therefore cannot lawfully bear the Challenged Representations.

64. Because the Products' menus and kiosk displays include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1) and (r)(1)(A).

65. Plaintiff does not seek to enforce the FDCA directly since no private right of action exists under 21 U.S.C. § 337(a). Plaintiff instead seeks relief under independently enforceable state consumer-protection laws, and relies on the federal misbranding standard, and Defendant's failure to satisfy it, as directly relevant to and probative of whether the "Sugar Free" representation is false, deceptive, or misleading under those independent state-law standards.

**F. Defendant Separately Violates the Calorie Disclaimer the FDA Requires**

66. Even if the "Sugar Free" beverages contained less than 0.5 grams of sugar per serving, Defendant still could not lawfully market them as "sugar free" in the manner currently used. Section 101.60(c)(1)(iii) permits a product to be described as "sugar free" only where the product either (A) "is labeled 'low calorie' or 'reduced calorie' or bears a relative claim of special dietary usefulness," or (B) the term is "immediately accompanied, each time it is used," by one of

the following statements: "not a reduced calorie food," "not a low calorie food," or "not for weight control."

67. The Products are not labeled "low calorie" or "reduced calorie," and Defendant does not accompany its use of the phrase "Sugar Free" with any of the required disclaimers. The Products instead range from approximately 90 to 280 calories per serving.

68. Thus, each time Defendant uses the phrase "Sugar Free" in connection with any of the Products, Defendant commits an independent violation of 21 C.F.R. § 101.60(c)(1)(iii). These violations do not depend on the Products' actual sugar content and are independent from the violations described above.

69. The FDA imposed the disclaimer requirement because consumers understand "sugar free" to indicate that a product "is low in calories or significantly reduced in calories." 21 C.F.R. § 101.60(c)(1). By using the term without the required disclaimer, Defendant represents not only that the Products contain no sugar, but also conveys that the Products are low in or significantly reduced in calories, which is likewise false.

**G. Reasonable Consumers Rely on Claims and Cannot Reasonably Be Expected to Recognize the Deception**

70. A reasonable consumer exercising ordinary care has no reason to distrust or second-guess an affirmative, prominently placed Challenged Representation on the Products. Consumers are entitled to rely on the truth of such statements without independently parsing the ingredient list or nutrition information.

71. Even if they viewed the "Nutrition & Ingredients" information on the self-service kiosk, they would not be able to tell whether the beverages contained sugar or how much sugar the beverages contained.

72. The Nutrition & Ingredient window provides only total calories and calories by component: ice, vanilla syrup, espresso shot, and whole milk. It does not state grams of sugar or lactose.

73. While some customers may perhaps recognize whole milk to contain lactose sugar, the studies indicate that the vast majority do not.

74. Indeed, empirical food literacy research establishes that a vast majority of the consuming public is unaware that plain, unflavored fluid dairy milk contains naturally occurring sugars.[11] In consumer studies evaluating nutrition classification accuracy, researchers determined that while most respondents can correctly identify fructose in fruit as a natural sugar, nearly half (44.8%) of consumers are incapable of properly classifying the lactose in milk. *Id.* In fact, an additional 21.9% actively misclassify it as an "added" or "free" sweetener. *Id.*

75. The average consumer operates under the false assumption that fluid milk is entirely devoid of sugar.

76. Because consumers do not know milk contains sugar, they often interpret a "Sugar Free" beverage label to mean the final beverage is entirely free of sugar. See *id*. Consumers assume that external sweeteners—such as sucralose, aspartame, saccharin, or acesulfame potassium—are added to provide the sweet-tasting beverage.

77. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Nor do reasonable consumers possess specialized knowledge of chemistry.

78. Defendant's listing of "whole milk" among the ingredients does not, and cannot reasonably be expected to cure, the false and misleading impression created by the Challenged

---

[11] Remember Roger Adjei et al., *Self–Reported Knowledge and Understanding of Added Sugars by Consumers*, 10 Heliyon, no. 5, 2024, at 1, 5.

Representation. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**H. Defendant's Conduct Was Undertaken with Knowledge of the Falsity, or Reckless Disregard for the Truth, of the Challenged Representation**

79. Defendant knew, or in the exercise of reasonable diligence should have known, that: (a) the Products contain lactose sugar; (b) lactose sugar is a disaccharide and therefore a sugar; (c) Defendant nonetheless states "Sugar Free" on the marketing materials; and (d) reasonable consumers would rely on that statement in deciding whether, and how much, to pay for the Products.

80. Defendant is a sophisticated, national fast-food company with access to food-science, regulatory, and legal expertise sufficient to know the composition of its own Products and the requirements applicable to nutrient-content claims made on their labels. Defendant's use of whole milk was not accidental or incidental; it was, upon information and belief, a deliberate formulation decision made with knowledge of lactose sugar's function and regulatory classification as a sugar.

81. Defendant's continued use of the Challenged Representation is particularly difficult to justify given the widespread and growing public attention paid to sugar content in food and beverages.

82. Defendant could have declined to distribute Products bearing the Challenged Representation, sought reformulation, or stopped using the Challenged Representation, but did not do so.

**I. Plaintiff's and the Class's Injury**

83. Defendant markets the Products, including through its brick-and-mortar stores, third party Apps, and its own website, as premium, "better-for-you" beverages, consistent with the

premium retail price point at which the Products are sold. Consumers who pay a premium price for the Products marketed on this basis are likely to select the Products specifically because of health and nutrition attributes such as the Challenged Representation, reinforcing both the materiality of the Challenged Representation and the existence of a price premium attributable to it.

84. As a direct and proximate result of Defendant's distribution and sale of the Products bearing the false and misleading Challenged Representation, Plaintiff and Class Members: (a) paid money for a product that was not as represented; (b) paid a price premium attributable to the false "Sugar Free" claim; and (c) were denied the benefit of the bargain for which they paid.

85. Plaintiff and Class Members would not have purchased the Products, or would have paid materially less for them, had they known that the Products contained sugar.

## CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action on behalf of himself and all members of the following proposed classes (collectively, the "Class"), pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3):

> **New York Class:** All persons who purchased Defendant's Products bearing the "Sugar Free" representation in the State of New York, for personal, family, or household use, during the period permitted by the applicable statute of limitations.
>
> **Nationwide Class:** All persons in the United States who purchased Defendant's Products bearing the "Sugar Free" representation, for personal, family, or household use, during the period permitted by the applicable statute of limitations.
>
> **Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased Defendant's Products bearing the "Sugar Free" representation, for personal, family, or household use, during the period permitted by the applicable statute of limitations.

87. Excluded from the Class are: (a) Defendant and its officers, directors, and employees; (b) any entity in which Defendant has a controlling interest; (c) the judge to whom this action is assigned and members of the judge's immediate family; and (d) counsel of record for the parties.

88. Plaintiff reserves the right to amend or modify the Class definition, and to propose subclasses, as appropriate following discovery.

89. Numerosity (Fed. R. Civ. P. 23(a)(1)): The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this stage and can be ascertained through discovery of Defendant's and its franchisees' sales and distribution records, upon information and belief the Class consists of many thousands of consumers nationwide and many thousands of New York consumers specifically, given the Products' sale through thousands of McDonald's restaurants throughout the State and the country.

90. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all Class Members, including: (a) whether lactose is a sugar; (b) whether the Products contain lactose in amounts exceeding 0.5 grams per serving; (c) whether the "Sugar Free" claim is materially misleading to a reasonable consumer; (d) whether Defendant's conduct is consumer-oriented within the meaning of GBL §§ 349 and 350; (e) whether Defendant knew or should have known the Challenged Representation was false or misleading; and (f) whether Class Members were injured, and the proper measure of damages or restitution.

91. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all Class Members, purchased a Product bearing the Challenged

Representation and was subjected to the same allegedly deceptive practice and the same type of resulting injury.

92. Adequacy (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with, and not antagonistic to, those of the Class, and Plaintiff has retained counsel experienced in consumer class action litigation.

93. Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)): The common questions of law and fact identified above predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual damages available to any single Class Member are likely too small to justify the expense of individual litigation, such that most Class Members would have no realistic avenue for redress absent a class action. A class action will also avoid the risk of inconsistent adjudications and will conserve judicial resources.

## CAUSES OF ACTION

## COUNT I

### N.Y. Gen. Bus. Law — § 349 Deceptive Acts and Practices

94. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

95. GBL § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." A private right of action is conferred by GBL § 349(h) on any person injured by reason of a violation of this section.

96. Defendant's distribution and sale of the Products bearing the Challenged Representation is consumer-oriented conduct, as it is directed at, and affects, consumers generally rather than any private dispute unique to the parties.

97. The Challenged Representation is materially misleading to a reasonable consumer acting reasonably under the circumstances, because it represents that the Products are sugar free when, in fact, the beverages contain approximately 2 to 18 grams of lactose sugar in each serving.

98. As a direct and proximate result of Defendant's deceptive act or practice, Plaintiff and Class Members suffered actual injury, including but not limited to payment of money for Products that did not conform to their representations and payment of a price premium attributable to the Challenged Representation.

99. Pursuant to GBL § 349(h), Plaintiff and Class Members are entitled to recover actual damages or fifty dollars, whichever is greater, and, because Defendant's conduct was willful or knowing, up to three times actual damages, together with reasonable attorneys' fees and costs.

## **COUNT II**

### **N.Y. Gen. Bus. Law § 350 — False Advertising**

100. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

101. GBL § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce." GBL § 350-a defines advertising as false or misleading where it is likely to mislead a reasonable consumer acting reasonably under the circumstances, and where the misleading aspect is material. A private right of action is conferred by GBL § 350-e.

102. The Challenged Representation constitutes advertising within the meaning of GBL § 350, as it is intended to induce consumers to purchase the Products.

103. The Challenged Representation is false and misleading in a material respect because Defendant represents that the Products are sugar free, when in fact the beverages contain approximately 2 to 18 grams of lactose sugar in each serving, a fact that would be material to a reasonable consumer's purchasing decision.

104. Defendant knew, or in the exercise of reasonable care should have known, that the Challenged Representation was false or misleading at the time the Products were distributed and sold in New York.

105. As a direct and proximate result of Defendant's false advertising, Plaintiff and Class Members suffered injury in the form of money paid for Products that did not conform to their representations and a price premium attributable to the Challenged Representation.

106. Pursuant to GBL § 350-e, Plaintiff and Class Members are entitled to recover actual damages or five hundred dollars, whichever is greater, and, because Defendant's conduct was willful or knowing, up to three times actual damages up to ten thousand dollars, together with reasonable attorneys' fees and costs.

**COUNT III**

**Violation of State Consumer Protection Statutes (On Behalf of the Multi-State Class)**

107. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

108. Plaintiff brings this Count individually and on behalf of the members of the Multi-State Class against Defendant.

109. The consumer protection statutes of the States in the Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce, and are materially similar to one another: California (Cal. Bus. & Prof. Code § 17200 et seq. and Cal. Civ. Code § 1750 et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 Ill. Comp. Stat. 505/1 et seq.); Massachusetts (Mass. Gen. Laws ch. 93A, § 1 et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67 et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Jersey (N.J. Stat. Ann. § 56:8-1 et seq.); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010 et seq.).

110. Defendant's distribution and sale of the Products bearing the Challenged Representation constitutes an unfair or deceptive act or practice under each of these statutes, because the Challenged Representation represents that the Products are "Sugar Free" when the Products contain approximately 2 to 18 grams of lactose sugar per serving.

111. Defendant intended that Plaintiff and the other members of the Multi-State Class would rely upon its deceptive conduct, and a reasonable consumer would in fact be misled by it.

112. As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and the members of the Multi-State Class have sustained damages, including payment of a price premium attributable to the Challenged Representation, in an amount to be proven at trial.

## COUNT IV

### Unjust Enrichment (On Behalf of the Nationwide Class)

113. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

114. By distributing and selling Products bearing the false Challenged Representation, Defendant obtained money from Plaintiff and Class Members in the form of the purchase price paid for the Products, including any premium attributable to the Challenged Representation.

115. Defendant was thereby enriched at the expense of Plaintiff and Class Members, and equity and good conscience require Defendant to disgorge, and make restitution of, the benefit unjustly retained.

116. It would be inequitable for Defendant to retain the benefit conferred without restitution to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter judgment as follows:

A. Certifying the Class as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B. Awarding Plaintiff and the Class actual, compensatory, and price-premium damages in an amount to be proven at trial;

C. Awarding Plaintiff and the Class statutory damages of $50 per violation under N.Y. Gen. Bus. Law § 349(h) and $500 per violation under N.Y. Gen. Bus. Law § 350-e(3);

D. Awarding treble damages for Defendant's knowing and willful violations under N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3);

E. Awarding Plaintiff and the Multi-State Class damages, including statutory, multiple, and punitive damages where available, under the consumer protection statutes of the States included in the Multi-State Class;

F. Awarding restitution and disgorgement of the amounts by which Defendant has been unjustly enriched;

G. Ordering that Defendant bear the cost of notice to the Class;

H. Awarding Plaintiff and the Class pre- and post-judgment interest;

I. Awarding Plaintiff and the Class reasonable attorneys' fees, expenses, and costs of suit; and

J. Granting such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: October 19, 2026

Respectfully submitted,

*<u>/s/ James Chung</u>*
James Chung, Esq.
LAW OFFICE OF JAMES CHUNG
43-22 216th Street
Bayside, NY 11361
T: 718-461-8808
E: jchung_77@msn.com

*<u>/s/ James Kelly</u>*
James C. Kelly, Esq.
SDNY Bar No. JK9616
THE RUSSO FIRM
244 5th Avenue, Suite K-278
New York, NY 10001
T: 212-920-5042
E: jkelly@therussofirm.com

Anthony J. Russo, Jr., Esq.
THE RUSSO FIRM
1001 Yamato Road, Suite 106
Boca Raton, FL 33431
T: 844-847-8300
E: anthony@therussofirm.com

*Counsel for Plaintiff and the Proposed Class*